[No. 12657-5-II.   Division Two.   August 21, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES RHODES, *Petitioner.*

914

*James E. Warme* and *Calbom Pond Falkenstein Warme & Marshall,* for petitioner.

*C.C. Bridgewater, Jr., Prosecuting Attorney,* for respondent.

Worswick, J.—Does a hunter who kills a doe during buck season violate RCW 77.16.020(1), which provides:

> It is unlawful to hunt, fish, possess, or control a species of game bird, game animal, or game fish *during the closed season for that species . . ..*

(Italics ours.) James Rhodes is such a hunter. He contends that we must construe this criminal statute most favorably to him and, that under the precise words, a hunting season is not "closed" for doe unless it is also closed for buck. We accepted discretionary review of Rhodes's misdemeanor conviction, and we now affirm.

◼ Rhodes's contention, that we must apply the rule of lenity and construe the statute most favorably to him, is flawed because he ignores preconditions to the application of the rule. The rule of lenity operates only in the absence of clear legislative intent and only when the criminal statute is ambiguous. *State v. Pentland,* 43 Wn. App. 808, 811, 719 P.2d 605, *review denied,* 106 Wn.2d 1016 (1986); *see also* 3 C. Sands, *Statutory Construction* § 59.03 (4th ed. 1986) (the rule of lenity should only be applied if after reviewing all sources of legislative intent the statute still

remains ambiguous). An excursion into the legislative history of the game code, RCW Title 77, reveals that the Legislature clearly intended that RCW 77.16.020(1) apply to penalize Rhodes's behavior.

■ Three provisions of the code, RCW Title 77, bear on this issue: (1) RCW 77.16.020(1), set out above; (2) RCW 77.08.010, which defines "open season" and "closed season;" and (3) RCW 77.12.040, which empowers the wildlife commission to specify quantities, species, and sex of animals that may be taken or controlled. The current versions of RCW 77.08.010(10) and (11) provide:

> (10) "Open season" means those times, manners of taking, and places or waters established by rule of the commission for the lawful hunting, fishing, or possession of game animals, game birds, or game fish. "Open season" includes the first and last days of the established time.
>
> (11) "Closed season" means all times, manners of taking, and places or waters other than those established as an open season.

The current version of RCW 77.12.040 states:

> The commission shall adopt, amend, or repeal, and enforce reasonable rules prohibiting or governing the time, place, and manner of taking or possessing game animals, game birds, or game fish. The commission may specify the quantities, *species, sex,* and size of game animals, game birds, or game fish that may be taken or possessed. The commission shall regulate the taking, sale, possession, and distribution of wildlife and deleterious exotic wildlife. The director may adopt emergency rules under RCW 77.12.150.

(Italics ours.) These provisions were simultaneously enacted as part of the game code in 1955. *See* Laws of 1955, ch. 36, §§ 77.16.020, 77.08.010; and 77.12.040, respectively.[1]

---

[1] The same enactment announced the statutory purpose of preserving, protecting, and perpetuating wildlife. Laws of 1955, ch. 36, § 77.12.010. The Legislature has consistently reiterated this purpose. *See* Laws of 1980, ch. 78, § 12; Laws of 1987, ch. 506, § 1 (including intent to have wildlife commission "retain authority . . . to establish the goals and objectives of the [wildlife] department"). It is common knowledge that deer cannot be perpetuated if female deer are subject to unregulated killing. See our common knowledge discussion, below.

The 1955 version of RCW 77.16.020(1) provided as follows:

It shall be unlawful for any person to hunt, trap, or fish for any game birds, game animals, fur–bearing animals, or game fish during the respective closed seasons therefor.

Laws of 1955, ch. 36, § 77.16.020. Had this statute remained unchanged, Rhodes would have no argument at all. It was changed but an examination of the later legislation reveals that its meaning did not change.

The Legislature amended the code in 1980, changing RCW 77.16.020(1) to its present wording making it unlawful to hunt an animal during a "closed season for that species".[2] *See* Laws of 1980, ch. 78, § 70; RCW 77.16-.020(1). Rhodes's whole argument turns on what he claims is the dictionary definition of "species" and the Legislature's use of the phrase, "for that species". He is correct in contending that, because the statute does not define "species," we may look to its ordinary dictionary definition. *Northwest Steel Rolling Mills, Inc. v. Department of Rev.,* 40 Wn. App. 237, 240, 698 P.2d 100, *review denied,* 104 Wn.2d 1006 (1985). The definition of "species" Rhodes prefers (there are several) defines it as "a group of intimately related and physically similar organisms that actually or potentially interbreed and are less commonly capable of fertile interbreeding with members of other groups". *Webster's Third New International Dictionary* 2187 (1969). Because this particular definition emphasizes the potential for interbreeding, it necessarily would include both sexes, and Rhodes argues that because the season was open for buck, it was not "closed for [the] species," and

---

[2]The 1980 amendments to RCW 77.08.010 (definitions) and RCW 77.12.040 (authority of commission) are insignificant for the purposes of this analysis. *See* Laws of 1980, ch. 78, §§ 9 and 15 respectively. Similarly, all three provisions were treated in 1987 amendments. *See* Laws of 1987, ch. 506, §§ 59, 11, 15. While the 1987 amendments do not affect the issue here, the Legislature's repeated simultaneous consideration of these statutes shows its intent to treat the provisions as part of a greater whole.

therefore not closed for doe.[3] Rhodes's argument, persuasive on the surface, is robbed of force by the Legislature's own cautionary language concerning the 1980 amendments and by applicable principles of statutory construction.

The purpose of the 1980 amendments was to "modernize" the game code because "much of the language in Title 77 RCW is confusing, contradictory, or out–of–date." *Final Legislative Report*, 46th Reg. Sess. 18 (1980). "The majority of revisions are technical and either modernize the language in the Game Code or attempt to provide consistency in the language and substance of the game laws." *Final Legislative Report, supra,* at 18. Further, the Legislature explicitly stated:

> In enacting this 1980 act, it is the intent of the legislature to revise and reorganize the game code of this state to clarify and improve the administration of the state's game laws. *Unless the context clearly requires otherwise, the revisions made to the game code by this act are not to be construed as substantive.*

(Italics ours.) Laws of 1980, ch. 78, § 1.

It is apparent to us that the Legislature's reference to "species" in RCW 77.16.020(1) as revised is not a substantive change. RCW 77.16.020(2), the provision making it unlawful to hunt in excess of bag limits has always contained the word "species." *See* Laws of 1955, ch. 36, § 77.16.020; Laws of 1947, ch. 275, § 41 (repealed by 1955 enactment that used the same language). Adding "species" to subsection (1) merely "provide[d] consistency in the language and substance of the game laws" as the Legislature intended. Similarly, replacing "closed seasons therefor" in the statute with "closed season for that species" is the kind of "technical" revision that modernizes language and provides consistency.

---

[3]The wildlife commission promulgated rules for the 1987 hunting season in pamphlet form under WAC 232–28–313, –314. On October 31, 1987, the date of the incident in question, the area in which Rhodes was hunting was open for "General Buck season."

■ Rhodes argues that this court cannot create offenses by supplying legislative omissions or correcting legislative oversights, citing *Jenkins v. Bellingham Mun. Court,* 95 Wn.2d 574, 580–81, 627 P.2d 1316 (1981). Concerning this statute, however, the Legislature has told us explicitly that nothing in the amendments is to be construed as substantive unless the context *clearly* requires otherwise. Nothing in the context of the 1980 legislation persuades us that these amendments are substantive. Further, even though a change in statutory language usually creates a presumption of a change in legislative intent, that presumption can be overcome, as it is here, by the stated purpose of the act. *International Ass'n of Firefighters Local 1445 v. Kelso,* 57 Wn. App. 721, 728, 790 P.2d 185 (1990).

■ Our conclusion is fortified by four venerable principles of statutory construction that apply here. First, our duty in interpreting a statute is to ascertain and give effect to the intent and purpose of the Legislature as expressed in the act. *Tommy P. v. Board of Comm'rs,* 97 Wn.2d 385, 391, 645 P.2d 697 (1982). Second, the act must be construed as a whole, and all language must be given effect. *Tommy P.,* 97 Wn.2d at 391. Third, all provisions must be harmonized, if possible. *Tommy P.,* 97 Wn.2d at 391. Fourth, strained or absurd results must be avoided. *Briggs v. Thielen,* 49 Wn. App. 650, 654, 745 P.2d 523 (1987), *review denied,* 110 Wn.2d 1020 (1988).

Applying these principles to this case leads us to the following conclusions: In enacting the game code, the Legislature's purpose was to empower a department to preserve, protect, and perpetuate wildlife. RCW 77.12.010. For that purpose, the Legislature defined "open season" and "closed season" (RCW 77.08.010(10), (11)), *and it created a commission to determine what these seasons would be for various varieties and sexes* of animals. RCW 77.12.040. Under that authority, the commission promulgated and published a rule allowing buck, but not doe, hunting during the time Rhodes let fly his errant shot. Giving effect to the legislative intent and viewing the act as a whole, we are compelled

to conclude that the "season" was "closed" for doe at that time, and the provisions of the penalty statute, RCW 77.16.020(1), applied to Rhodes.

Even were we forced to view this criminal statute in isolation, Rhodes would not prevail. While criminal statutes must give notice of the prohibited conduct, less strictness is called for in construing a penal statute when the function of notice and warning is assisted by common knowledge and understanding of conventional values. 3 C. Sands, *Statutory Construction* § 59.03 (4th ed. 1986). Rhodes concedes that no one would condone taking a doe deer during the buck deer season, thereby admitting that it is common knowledge among hunters that certain sexes are hunted only during certain seasons so as to perpetuate the species, a conventional value as well as one of the purposes of the game code.

Further, while above we alluded to the definition of "species" most favorable to Rhodes's argument, we are not required to apply it to the statute. In determining the meaning of a word used in a particular instance, a court must consider the subject matter in connection with which the word is used as well as the context of the statute in which it appears. *State v. Garrison,* 46 Wn. App. 52, 54, 728 P.2d 1102 (1986). *See also State v. Smith,* 48 Wn. App. 33, 35, 737 P.2d 723 (1987) (questioned term is not looked at in a vacuum; statute construed in context in order to determine meaning of its wording), *aff'd,* 111 Wn.2d 1, 759 P.2d 372 (1988). Another definition of species is "a class of individuals having common attributes and designated by a common name". *Webster's Third New International Dictionary* 2187 (1969). This definition of species can readily be applied to doe deer ("common attribute," "common name"). Under this definition, Rhodes killed an animal during a season "closed for that species," namely doe deer.

Finally, even when penal statutes must be construed strictly to the end that activities not intended to be included in them are not prosecuted, they are not construed in a forced, narrow, or overly strict manner so as to defeat

the intent of the Legislature. *State v. Sayler,* 36 Wn. App. 230, 235, 673 P.2d 870 (1983). The construction that Rhodes urges, one that would permit hunting doe during a season open only for buck, defeats the legislative intent to protect wildlife and permit the game commission to regulate what animals may be hunted when. This strained result must be avoided. *Briggs v. Thielen, supra.*

Affirmed.

ALEXANDER, C.J., and PETRICH, J., concur.